**IN THE UNITED STATES DISTRICT COURT**
**FOR NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

**UNITED STATES OF AMERICA**  ::
::   **CRIMINAL ACTION**
**v.**   ::
::   **NO. 1:06-MJ-455-AJB**
**ARTHUR L. DYERS,**   ::
::
**Defendant.**   ::

**OPINION AND ORDER**

Before the Court is Defendant Arthur L. Dyers's motion to dismiss the two citations issued to him, [Doc. 7]. In its responses, the government has moved to dismiss one citation, [Doc. 9], and opposes dismissal of the other, [Doc. 10]. On January 24, 2007, the Court granted the government's motion to dismiss one of the charges, [Doc. 17]. For the following reasons, the balance of Dyers's motion is **DENIED.**

*Introduction*

On September 6, 2005, Dyers was served at the Atlanta Veteran's Administration Medical Center ("VAMC") with Violation Notice V0067304, charging a violation of 38 C.F.R. § 1.218(b)(11), [Doc. 1].[1] The offense was described in the violation notice

---

[1]     Dyers also was served with Violation Notice V0067305, charging a violation of 38 C.F.R. § 1.218(b)(6) ("Failure to Comply"). That charge was dismissed by the Court's January 24 Order, [Doc. 17]. The Court expresses no opinion as to the validity of the arguments made by Dyers with regard to that charge.

as "Disorderly Conduct, which [c]reates loud, boisterous noise[ ]." [Doc. 1 at 1].[2]

Dyers contends that the charged regulation does not allege an offense, because the

regulatory provision under which he was charged is only the "schedule of offenses and

penalties" portion of the regulation, rather than the substantive offense proscribing

certain conduct which, he contends, is set out in 38 C.F.R. § 1.218(a)(5).  Thus, he

contends that he has not been given proper notice of the charge against him, citing

*Stirone v. United States*, 361 U.S. 212 (1960).  [Doc. 7 at 3].

    Dyers also argues that if the charge against him is construed to allege a violation

of § 1.218(a)(5), that provision is unconstitutionally void on vagueness and overbreadth

grounds.  For example, he notes that § 1.218(a)(5) does not include a prohibition on

---

[2]    The probable cause section of the violation notice, as written by VA
Officer McCullor,  provides as follows:

    On 6 Sept. 05, Dyers came to the VA police, requesting assistance
    with a co-worker, who lock[ed] his key in his car[.  O]nce Dyers was
    informed that we no longer provide that type of service, but we'll be glad
    to call a locksmith, at that time Dyers became loud, boisterous toward VA
    police (McCullor)[.] Dyers was asked time and time to lower his voice,
    but refused.  Dyers was given two warnings, but he continue[d] to be loud,
    boisterous and refusing to ID himself.  As Dyers was leaving the office he
    stated that he was going to take care of me[.  H]e was informed that he
    should not be making [a] threat.

[Doc. 1 at 2].

2

"boisterous" behavior.  In addition, he alleges that the terms "loud" and "unusual" are unconstitutionally vague because they do not permit an ordinary citizen to understand what conduct is prohibited by the statue, and do not provide sufficient guidance to law enforcement officers charged with enforcing the ordinance.  He also notes that § 1.218(b)(5) does not contain a *mens rea* element in order that conduct purporting to be in violation of the regulation could be tested in an objective manner.  Finally, he contends that the statute violates his First Amendment right of freedom of speech.

The government responds that the conduct prohibited by § 1.218(b)(11) is nearly identical to the conduct prohibited under § 1.218(b)(5), and thus sufficient to place Dyers on notice as to the prohibited conduct.  It also argues that neither code section is unconstitutionally vague or overbroad.  It contends that Dyers cannot show that the statutes infringe upon a substantial amount of protected speech, and that the terms "loud" and "unusual" are common terms understandable by people of ordinary intelligence.  It further submits that the regulations prohibit conduct that would tend to disturb the routine operations of a VA hospital, and also sufficiently set out the elements of each offense, thus properly guiding enforcing officials.  As for Dyers's argument that the regulations lack a *mens rea* element, the government points out that in the absence of an expressed *mens rea*, the Eleventh Circuit Court of Appeals has

3

implied a general intent before a person may be convicted of engaging in certain conduct, citing *United States v. Grossman*, 131 F.3d 1449, 1452 (11th Cir. 1997). Finally, the government contends that the provisions do not prohibit general speech but rather "loud and unusual noise" and other disruptive behavior, which is not afforded the same protections as generalized speech.

### *Discussion*

### *1. The Charge Is Properly Alleged*

Title 38 C.F.R. § 1.218 concerns security and law enforcement at Veterans Adminstration facilities.  Section 1.218(b) is entitled "[s]chedule of offenses and penalties."  Section 1.218(b)(11), the section which Dyers is charged with violating, provides:

> (b) Conduct in violation of the rules and regulations set forth in paragraph (a) of this section subjects an offender to arrest and removal.
>
> * * *
>
> (11) Disorderly conduct which creates loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tend to impede or prevent the normal operation of a service or operation of the facility, $250.

38 C.F.R. § 1.218(b)(11).

4

On the other hand, § 1.218(a) is captioned "[a]uthority and rules of conduct."

Section 1.218(a)(5) provides:

> (a) Pursuant to 38 U.S.C. [§] 901, the following rules and regulations apply at all property under the charge and control of VA . . . .
>
> * * *
>
> (5) Disturbances.  Conduct on property which creates loud or unusual noise; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; which prevents one from obtaining medical or other services in a timely manner; or the use of loud, abusive, or otherwise improper language . . . is prohibited.

38 C.F.R. § 1.218(a)(5).

The Court finds persuasive the cases which have directly considered the very issue claimed in Dyers's motion.  In *United States v. Fentress*, 241 F. Supp. 2d 526 (D. Md. 2003), *aff'd*, 69 Fed. Appx. 643, 2003 WL 21711391 (4th Cir. Jul. 24, 2003), the defendant was cited for violation of § 1.218(b)(11), in that he engaged in "disorderly conduct which creates loud, boisterous and unusual noise, which tends to impede or prevent normal operation of the facility."  *Fentress*, 241 F. Supp. 2d at 528. He was convicted by a United States Magistrate Judge and appealed his conviction to the District Court.  Like Dyers, Fentress also claimed he was improperly charged under

5

§ 1.218(b)(11) rather than § 1.218(a)(5).  Relying upon *United States v. Williams*, 1990 WL 1990 (6th Cir. Jan. 8, 1990), the *Fentress* Court concluded that "'the language for the penalty section was similar to that of the substantive offense section and both sections expressly prohibit the conduct for which [Fentress] was convicted.'" *Fentress*, 241 F. Supp. 2d at 529 (quoting *Williams*, 1990 WL 811 at * 2).

In *Williams*, the defendant, a VA police officer, had a confrontation with a supervisor over denial of leave and subsequently was cited under § 1.218(b)(11) for disorderly conduct.  In rejecting Williams's challenge because he was  charged under § 1.218(b)(11) rather than § 1.218(a)(5), the Sixth Circuit held:

> Williams next argues that the notice of violation filed against him failed to charge an offense because he was charged under the "schedule of offenses and penalties" portion of the regulation, § 1.218(b)(11), rather than the substantive offense section of the regulation, § 1.218(a)(5).  He further argues that the statement of "probable cause" contained in the notice of violation did not describe conduct which is prohibited by § 1.218(a)(5).  Williams could only be tried for the offenses for which he was specifically charged in the notice of violation.  *See Stirone v. United States*, 361 U.S. 212, 217 (1960).  Although as a technical matter, Williams was charged under the penalty section of the regulation in question rather than the substantive offense section, the language of the penalty section is similar to that of the substantive offense section and both sections explicitly prohibit the conduct for which Williams was convicted. Thus, we cannot say that because the government failed to charge Williams under the substantive offense section, Williams was not charged with a convictable offense.

6

*Williams*, 1990 WL 811 at * 2.

As in *Fentress* and *Williams*, Dyers is charged in a citation which cites to § 1.218(b)(11) and sets forth in the probable cause statement a description of the allegations against him.  These allegations provide sufficient notice to allow Dyers to defend against the instant charge.

The reasoning in *Williams* and *Fentress* is supported by the Federal Rules of Criminal Procedure and Eleventh Circuit precedent.  FED. R. CRIM. P. 7(c)(3) provides that "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction."  The Eleventh Circuit has held:

> Although Rule 7(c)(3) is most frequently cited in connection with clerical or inadvertent errors in statutory citations, the rule is not restricted to such errors.  Citing *Williams v. United States*, 168 U.S. 382 [ ] (1897), the Advisory Committee Notes for subsection (c)(3), state that "[a] conviction may be sustained on the basis of a statute or regulation other than that cited."  In *Williams* the Supreme Court held:
>
>> It is wholly immaterial what statute was in the mind of the district attorney when he drew the indictment, if the charges made are embraced by some[ ]statute . . . in force. . . .  We must look to the indictment itself, and, if it properly charges an offense under the laws of the United States, that is sufficient to sustain it, although the representative of the United States may have supposed that the offense was covered by a different statute.

AO 72A
(Rev.8/82)

*Id.* at 389[ ]; *see also United States v. Massuet*, 851 F.2d 111, 115 (7th Cir. 1988) (conviction upheld where prosecutor intentionally cited inappropriate statute but a non-cited statute proscribed the acts charged in the indictment).

*United States v. Bennett*, 368 F.3d 1343, 1354 (11th Cir. 2004), *judgment vacated on other grounds*, *Bennett v. United States*, 543 U.S. 1110 (2005). In the current case, Officer McCullor wrote that Dyers was engaging in "disorderly conduct, which creates loud, boisterous noise" when he became "loud, boisterous towards VA police . . . [and] was asked time and time to lower his voice, but refused" even after being warned, and told McCullor that "he was going to take care of" him. [Doc. 7-2 at 1]. Therefore, the allegations contained in the charging citation are sufficient notice to Dyers of the charges against him. *See also Williams*, 1990 WL 811 at * 3 ("An indictment must delineate the elements of an offense and adequately inform the defendant of the allegations he must be prepared to defend against at trial. *United States v. Debrow*, 346 U.S. 374, 376 (1953); FED. R. CRIM. P. 7(c)(1). Because it is clear that conduct which creates 'alarm,' 'annoyance,' and 'risk of physical harm' is 'disorderly conduct' within the meaning of § 1.218(b)(11), we hold that the notice of violation does state a violation of § 1.218(b)(11). We further conclude that Williams was adequately apprised of the allegations which he would have to refute at trial.").

8

Finally, to the extent that Dyers contends that the allegations in the citation are "insufficient to sustain convictions under the 'schedule of offenses and penalties' portion of the regulations," [Doc. 7 at 3], a motion aimed at the sufficiency of a criminal charge which is capable of determination without the trial of the general issue "shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict. . . ." FED. R. CRIM. P. 12(e); *United States v. Adkinson*, 135 F.3d 1363, 1369 n.11 (11th Cir. 1998); *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir. 1983). The law, however, in this Circuit is clear: in ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the charging document and, more specifically, the language used to charge the crimes. *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (citing *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir.1992)). A court may not "dismiss an indictment . . . on a determination of facts that should have been developed at trial." *Id*. (quoting *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987)). This is because

> [t]here is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. Moreover, this court is constitutionally barred from ruling on a hypothetical question. The sufficiency of a criminal indictment is

determined from its face. The indictment is sufficient if it charges in the language of the statute.

> [A]n indictment must be sufficiently specific to inform the defendant of the charge against him and to enable him to plead double jeopardy in any future prosecution for the same offense.  An indictment satisfies these requirements as long as the language therein sets forth the essential elements of the crime.  *United States v. Cole*, 755 F.2d 748, 759 (11th Cir. 1985).

*Critzer*, 951 F.2d at 307-08.  Therefore, in ruling on Dyers's motion to dismiss, the Court cannot address his contentions that the government is unable to prove certain alleged facts, nor the government's contrary argument that it can.  The charging document provides sufficient notice, and whether the government's proof satisfies § 1.218(b)(11) is a matter to be decided at trial.

> 2.    *The charging regulation is not constitutionally overbroad or vague*

In his next challenge, Dyers argues that § 1.218(a)(5) is the regulatory provision with which he should have been charged, and then he challenges the constitutionality of that regulation.  *See* Doc. 7 at 4 n.1.  However, as noted above, the Court finds that Dyers properly can be charged by a citation which alleges § 1.218(b)(11) has been violated.  Nonetheless, given the similarities of the §§ 1.218(a)(5) and 1.218(b)(11), the Court's discussion of the constitutionality of the charge applies to both.

10

### a. Facial Versus As-Applied Challenge

The government argues that Dyers cannot bring a facial challenge to either § 1.218(b)(11) or § 1.218(a)(5).  The Court disagrees.  It generally is true that except where First Amendment rights are involved, challenges to statutes must be evaluated in the light of the facts of the case at hand.  *See United States v. Mazurie*, 419 U.S. 544, 550 (1975); *United States v. Fisher*, 289 F.3d 1329, 1333 (11th Cir. 2002).  However, where the First Amendment is implicated, the Supreme Court has held that imprecise laws can be attacked on their face under two different doctrines.  First, the overbreadth doctrine permits facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when "'judged in relation to the statute's plainly legitimate sweep.'" *City of Chicago v. Morales*, 527 U.S. 41, 53 (1999) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612-15 (1973)).  Second, even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests.  *Morales,* 527 U.S. at 53, 55 (stating that there was no need to determine facial challenge to ordinance on overbreadth grounds "[f]or it is clear that the

11

vagueness of this enactment makes a facial challenge appropriate.") (citing *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)).

The Eleventh Circuit has recognized that, based on the Supreme Court's *Morales* decision, a facial challenge to a vague statute may still be permitted even where, for overbreadth purposes, the unconstitutional reach of a statute does not punish a "substantial" amount of protected free speech. *Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1329-31 (11th Cir. 2001). The conduct with which Dyers is charged most certainly is speech. Thus, the Court holds that, even if Dyers could not demonstrate that a statute suffers from unconstitutional overbreadth, he still may bring a facial challenge based on its alleged vagueness. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.6 (1982) (challenge to a statute on overbreadth grounds is closely related to a vagueness attack, since a less precise law may necessarily capture more protected conduct at its edges).

The Supreme Court has established a roadmap for lower courts to analyze overbreadth and vagueness claims:

> In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court then should examine the facial vagueness challenge . . . .

12

*Id.* at 494 (footnotes omitted).[3]

> ### b.    Overbreadth

The Supreme Court has held that because "the First Amendment needs breathing space, . . . statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick*, 413 U.S. at 611-12.  Litigants are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.  *Id.* at 612. An overbreadth challenge is based on the statute's "possible direct and indirect burdens on speech." *American Booksellers v. Webb*, 919 F.2d 1493, 1499-500 (11th Cir. 1990). The overbreadth doctrine "'protects the public from the chilling effect such a statute has on protected speech; the court will strike down the statute even though in the case before the court the governmental entity enforced the statute against those engaged in

---

[3]    The balance of the paragraph in *Vill. of Hoffman Estates* quoted above discussed a court's obligations if no constitutionally protected conduct is implicated. Since the conduct with which Dyers is charged is speech, the First Amendment is implicated, and the balance of the paragraph in *Vill. of Hoffman Estates* is not applicable.

unprotected activities.'" *Weaver v. Bonner*, 309 F.3d 1312, 1318-19 (11th Cir. 2002) (quoting *Nationalist Movement v. City of Cumming*, 934 F.2d 1482, 1485 (11th Cir. 1991) (Tjoflat, J., dissenting)).  That is, the legislature may not "'burn the house to roast the pig.'" *United States v. Williams*, 444 F.3d 1286, 1290 (11th Cir. 2006) (quoting *Butler v. Michigan*, 352 U.S. 380, 353 (1957)).  However, the overbreadth doctrine is "strong medicine," and should be "employed . . . only as a last resort." *Broadrick*, 413 U.S. at 613.  A statute's overbreadth "must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 615; *see also Williams*, 444 F.3d at 1296 ("Under the overbreadth doctrine, a statute that prohibits a substantial amount of constitutionally protect speech is invalid on its face.").

When challenging a law on overbreadth grounds, an "overbreadth claimant bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (quoting *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988)) (alteration in original).  Whether a law suffers from substantial overbreadth is "judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615. Dyers, however, has not demonstrated how either provision is overbroad, arguing mainly that the

14

provisions are unconstitutionally vague and allow law enforcement unfettered discretion in the regulations' application.  In making that argument, Dyers proffers the examples of grieving family members who had been informed of a veteran's terminal illness or VA employees engaging in a lively debate concerning social or political issues.

As to Dyers's first example, he has not demonstrated how the regulation's possible application to that scenario "substantially" affects free speech rights.  First, if the overbreadth doctrine is in part designed to prevent "chilling" of "free expression," *Hill*, 539 U.S. at 119; *Broadrick*, 413 U.S. at 612, it is unclear how a family member, overcome with grief or distress, would be inhibited from showing his emotions as a result of the regulation.  Second, and more important, the example is hardly foreign to the VAMC's, or any hospital's, "normal functioning." *Williams*, 1990 WL 811 at * 2.  Unfortunately, hospitals regularly are sites where people experience uncontrollable grief.  In order that a statute be overbroad, the risk of improper enforcement also must be "real." *Broadrick*, 413 U.S. at 616; *Koziara v. City of Casselberry*, 347 F. Supp. 2d 1223, 1229 (M.D. Fla. 2003).  Dyers's example is an unrealistic application of the regulation.

AO 72A
(Rev.8/82)

Second, as to Dyers's "lively debate" among co-workers example, as the *Fentress* Court recognized, it certainly is possible that the regulations could reach protected speech, for example, of a person or group protesting policies related to the treatment of veterans. *Fentress*, 241 F. Supp. 2d at 531. However, as that court recognized,

> A VA hospital, however, is a nonpublic forum. Government property is a nonpublic forum if "opening [it] to expressive conduct will somehow interfere with the objective use and purpose to which the property has been dedicated." *Warren v. Fairfax County*, 196 F.3d 186, 192-93 (4th Cir. 1999) (*en banc*); *see also United States v. Kokinda*, 497 U.S. 720, 725[ ] (plurality opinion) ("It is a long-settled principle that governmental actions are subject to a lower level of scrutiny when 'the government function operating . . . [is] not the power to regulate or license as lawmaker, . . . but, rather, as proprietor, to manage [its] internal operations.'") (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 896[ ] (1961)) (modifications in original). The purpose of a VA hospital is, obviously, treating patients. For that reason, VA regulations prohibit solicitation in VA facilities, 38 CFR § 1.218(a)(8), distributing handbills, 38 CFR § 1.218(a)(9), and demonstrations, 38 CFR § 1.218(a)(14).

*Fentress, id.; see also Smith v. United States*, 502 F.2d 512, 518 (5th Cir. 1974)[4] (affirming propriety of staff psychologist's discharge from VA hospital for refusing to stop wearing a "peace pin" while on duty, because employee's conduct substantially

---

[4]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

16

and materially interfered with the discharge of duties and responsibilities inherent in such employment). Again, a lively debate on a political or social issue among co-workers in the employee break room out of the hearing of patients or other staff members might not disrupt the normal operations of the VAMC, but, for example, loudly debating the merits of the Iraq war in front of veteran seeking treatment would be disruptive, and thus would not constitute speech beyond the reach of the regulations.

Therefore, Dyers's examples do not establish unconstitutional overbreadth.

### c.   Vagueness

The due process guarantee of the Fifth Amendment requires a statute or regulation to give "fair warning . . . in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear." *McBoyle v. United States*, 283 U.S. 25, 27 (1931). "'The . . . principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *United States v. Lanier*, 520 U.S. 259, 265 (1997) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 351 (1964), and *United States v. Harriss*, 347 U.S. 612, 617 (1954)). A law is void on its face if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Lanier*, 520 U.S. at

265 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)).  This is because a vague law may trap the innocent by failing to give fair notice of what is prohibited, may risk arbitrary or discriminatory enforcement by delegating too much authority to enforcers, and - when the regulation implicates First Amendment freedoms - may chill the exercise of those freedoms.  *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972); *Williams*, 444 F.3d at 1306.  Importantly, the Constitution demands a high level of clarity from a law if it threatens to inhibit the exercise of a constitutionally protected right, such as the right of free speech or religion.  *Konikov v. Orange County, Fla.*, 410 F.3d 1317, 1329, 1330 (11th Cir. 2005); *see also Vill. of Hoffman Estates*, 455 U.S. at 499; *Fisher*, 289 F.3d at 1333 ("The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.") (citation and internal quotation omitted).  Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, the Supreme Court has recognized that the more important aspect of vagueness doctrine "'is not actual notice, but the other principal element of the doctrine - the requirement that a legislature establish minimal guidelines to govern law enforcement.'"  *Kolender*, 461 U.S. at 357 (quoting *Smith v. Goguen*, 415 U.S. 566,

18

574 (1974)).  Statutes without identifiable standards "allow [ ] policemen, prosecutors, and juries to pursue their personal predilections."  *Smith*, 415 U.S. at 575.   However, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language."  *Grayned*,  408 U.S. at 110 (1972).

Where a statute does not define a term, courts must give words their common and ordinary meaning, absent some established technical definition, unless the legislature intended otherwise.  *Konikov*, 410 F.3d at 1329-30; *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1229 (11th Cir. 1982) (citing *Vill. of Hoffman Estates*, 455 U.S. at 501 n.18).

*Grayned* requires a claimant asserting that a statute is void for vagueness to prove either that the statute fails to give fair notice of wrongdoing or that the statute lacks enforcement standards such that it might lead to arbitrary or discriminatory enforcement.  *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 69-71 (1981); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 509 (1969).

Dyers's vagueness challenge must fail.  The terms about which he complains - - "loud," "unusual," "boisterous" - - are easily and understandably defined: "loud" - marked  by  intensity  or  volume  of  sound, MERRIAM-WEBSTER'S  COLLEGIATE DICTIONARY 689 (10th ed. 1999); "unusual" - not usual, not common, rare, *id.* at 1297;

19

"boisterous" - noisily turbulent, *id.* at 129. In the context of the challenged provisions, the "regulations warn a citizen against 'loud, boisterous and unusual noise' and against any behavior which is otherwise disruptive to the VA hospital's normal functioning." *Williams*, 1990 WL 811 at * 2. There is nothing vague or counterintuitive in this language. "Somehow we must get the message across to hospital staff that peace and quiet do have some healing benefits. . . ." *See generally* C. Richard Conti, M.D., *Quiet! Hospital Zone*, 27 CLIN. CARDIOL. 251-52 (May 2004), http://www.clinicalcardiology.org/productcart/pc/briefs/0405/may_editorial.pdf). While the regulations could further particularize the conduct they seek to prohibit, "imposing such a burden on the regulations' drafters would make impossible the task of writing criminal statutes [sic] broad enough to encompass a panoply of conduct and specific enough to fairly apprise citizens of what behavior is lawful." *Fentress*, 241 F. Supp. 2d at 530 (quoting *Williams*, 1990 WL 811 at * 2).

At the same time, the regulations do not leave to enforcing officers unfettered discretion as to their enforcement. In particular, § 1.218(b)(11)'s prohibitions are directed at conduct which tends to disturb the routine operations of a VA hospital. As such, it contains the requisite controlling standard of conduct to guide enforcing officials. *Williams*, 1990 WL 811 at * 2; *Fentress*, 241 F. Supp. 2d at 530;

*United States v. Richardson*, NO. 1:04-CR-067-ECS (N.D. Ga. Nov. 22, 2004), slip. op. at 5 (concluding that 41 C.F.R. § 102-74.390(a)'s prohibition of "loud or unusual noise or a nuisance" on Federal property does not authorize or encourage arbitrary or discriminatory enforcement, since law enforcement was not given absolute discretion to decide what constituted violation of the regulation; the offense was limited by requirement that the prohibited conduct exhibit certain specified characteristics).

Finally, the regulations are not void for vagueness because they do not contain a *mens rea* element.    In *Grossman*, 131 F.3d at 1451-52, the court construed 49 U.S.C. § 46504,[5] a provision in which the *mens rea* element was not expressly stated, as a general intent crime.    As in *Grossman*, therefore, the government must prove that Dyers's conduct was knowingly committed.

Moreover, in interpreting criminal statutes, the Supreme Court has in many cases imposed "broadly applicable *scienter* requirements, even where the statute by its terms

─────────────────────

[5]    Title 49 U.S.C. § 49504 provides:

An individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under title 18, imprisoned for not more than 20 years, or both.

21

does not contain them."  *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 70 (1994).  As the Court in *Staples v. United States*, 511 U.S. 600, 605-06 (1994), noted, "the common-law rule requiring *mens rea* has been followed in regard to statutory crimes even where the statutory definition did not in terms include it." (internal citations omitted).

In *United States v. Roper*,  2003 WL 24017061 (E.D.N.Y. 2003), the court construed the very regulation at issue in the present case as a general intent crime:

> Here, despite the lack of an explicit mens rea requirement specified in the statutory language, this Court construes the regulation to impose a scienter requirement, thus protecting those who may, as defendant alleges, innocently engage in conduct that violates the regulation.

> However, here the government need prove no more than that the defendant acted knowingly when he used loud and abusive language or engaged in conduct that obstructed the use of the entrance.  *See United States v. Rone*, 2003 WL 723986, at *2 (affirming conviction for violation of 38 C.F.R. § 1.218(a)(5) based on a showing that defendant acted knowingly).

*Roper*, 2003 WL 24017061 at * 14.  The Court finds this analysis persuasive and accordingly rejects Dyers's *mens rea* argument.

As the discussion above demonstrates, the regulation is not void for vagueness because the regulation is a general intent crime, defines the offense with definite and commonly understood words, and places limits on how it is to be enforced.

22

For all of the above and foregoing reasons, Dyers's motion to dismiss is **GRANTED** to the extent that the Court already has dismissed Violation Notice V0067305, and **DENIED IN ALL OTHER RESPECTS**.

**IT IS SO ORDERED**, this the 30th day of January, 2007.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

23